23 N.J. Super. 40 (1952)
92 A.2d 525
ANNA G. WEHRLE, PLAINTIFF,
v.
JACOB LANDSMAN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 5, 1952.
*42 Mr. Francis F. Welsh, attorney for the plaintiff.
Messrs. Milberg & Milberg, attorneys for the defendant.
SCHENK, J.C.C.
This case comes before the court on the plaintiff's motion to strike the answer and counterclaim, and for summary judgment, the defendant's motion to dismiss the complaint, and the plaintiff's motion to dissolve the restraint heretofore entered on September 17, 1952. The complaint is in three paragraphs and is in the form prescribed by the rules of the New Jersey Supreme Court. (See "Appendix of Illustrative Forms, Civil Procedure," No. 19 "Complaint for Possession of Land.") The amended answer admits a lease between plaintiff and Champion Trading Company, Inc., on January 12, 1946, and denies the allegations of the complaint except for the description of the property. It sets up several defenses, among them an assignment to a third party of the lease, and several mesne assignments resulting in the final one to the defendant by which defendant alleges there exists a relationship of landlord and tenant between plaintiff and defendant. The defendant further states that he has performed all covenants and conditions under the provisions of the lease, and alleges waiver of breaches by the plaintiff resulting in an estoppel to plead said alleged breaches. Defendant denies that any taxes are due and states that there is on deposit with the plaintiff the sum of $13,200 as security for the faithful performance of all the terms and provisions of the lease, and finally defends stating (apparently) that acceptance of the September 1, 1952 rent by the plaintiff waived the breach by the defendant in his failure to pay the taxes.
Defendant counterclaims, setting forth in his first count, paragraph "Sixteenth" of the original lease, whereby *43 Champion Trading Co., Inc., hereinafter called "Champion," the lessee, was to have an option to purchase the premises in question, and in his second count setting forth a new agreement (after default in the original agreement) dated August 27, 1948, between the plaintiff and the lessee Champion, whereby paragraph "Sixteenth" was revised to eliminate the option to purchase and to insert a provision whereby, should a sale of the premises occur during the term of the lease, the lessee would share in the net sales price of the premises in excess of the amount of $77,517 to the extent of 20% of such excess.
On September 17, 1952 an order was obtained by the defendant requiring the plaintiff to show cause why she, her agents, representatives and attorney should not be restrained from proceeding with a sale of the premises to Koven & Brother, Inc., with whom she had a contract of sale for a price of $110,000. At the hearing on the return day the restraint was continued pending the decision on the motions.
The original lease, dated January 12, 1946, was between the plaintiff and Champion, and contained paragraph "Sixteenth" as substantially set out above. It also contained the following two paragraphs:
"Fifth: In addition to the rental hereinabove specified, the Tenant agrees and covenants * * *
(e) To pay the landlord any increase in taxes that may be assessed against the land and buildings after the first five years of this lease over the amount of $3,000.00 per year. * * *
Twenty-first: If default shall be made in any of the covenants herein contained, it shall be lawful for the landlord to reenter the premises and the same to have again, repossess, and enjoy."
The defendant alleges either in his answer and counterclaim or in his supporting affidavits an assignment on January 12, 1946 of the original lease to Freifeld and Ghertler, individually, trading as Fit-Rite Container Company, a subsequent assignment by Fit-Rite Container Company to Ashland Corrugated Paper Products, Inc. on July 27, *44 1948 (both antecedent to default on the original lease between plaintiff and Champion and to the new agreement between plaintiff and Champion of August 27, 1948), an assignment by Ashland Corrugated Paper Products, Inc. to Sol Freifeld, Leonard Ghertler, and Morris N. Freifeld on December 16, 1948, an assignment by Leonard Ghertler, Sol Freifeld and Morris N. Freifeld to Eli Chanow on August 1, 1949, and an assignment on August 27, 1949 from Eli Chanow to defendant.
One of the crucial questions is whether the lease, as it is called, between Champion on the one side and Freifeld and Ghertler, trading as Fit-Rite Container Company, on the other was in fact an assignment. It certainly is not called such, but by its own terms is called a "lease." The plaintiff maintains that this instrument constituted a sublease rather than an assignment and that, therefore, the only thing that the defendant ultimately got was the interest of the subtenants, Freifeld and Ghertler, trading as Fit-Rite. This would seem to be borne out by the fact that after the default in the original lease, there was a subsequent agreement as alleged in the second count of the counterclaim, between plaintiff and Champion, the original lessee, on August 27, 1948, and it is further borne out by the fact that at that time Freifeld and Ghertler were the officers of Champion who executed the new agreement. Apparently, they still considered Champion as the tenant or lessee. Since an assignee can take no greater interest than that of his assignor, the defendant is in the position of an assignee of the sublessee. It is interesting to note that no formal notice was ever given to the landlord of the various so-called "assignments."
The original lease between the plaintiff and Champion provided that the landlord would be paid by Champion any increase in taxes that might be assessed against the land and buildings after the first five years of the lease over the amount of $3,000, and on July 31, 1952 the taxes were assessed against the premises for that taxable year in the *45 sum of $5,439.15. The landlord, through her attorney, agreed to accept the sum of $2,439.16 in monthly installments for three months starting August 1, 1952, and the balance on November 1, 1952. The defendant paid the monthly installment of $609.79 on the first of August, but neglected to pay the installment of September 1, 1952.
The primary question before the court is whether or not the case is governed by the rule of Duggan v. Lafkas in the former New Jersey Supreme Court, 3 N.J. Misc. 731 (1923). In that case there was a similar provision in the lease with respect to taxes, and here it is to be noted that there is a difference between taxes and rent because rent is a personal obligation, whereas a default in payment of taxes might defeat the landlord's interest. In the Duggan case the court stated that where the language employed is clear and definite there is an obligation imposed upon the lessee to make such payment, and that a failure to make such payment, whether this was a condition precedent or a covenant, gave the landlord the right of reentry and therefore ejectment (which was the precedent of our action for possession of land) would lie.
In addition to the Duggan case, the case of Ocean Grove Association v. Sanders in our former Court of Errors and Appeals, 68 N.J.L. 631 (1903) is in point. The law is well settled that a mere breach of covenant by the tenant can give the landlord no right of reentry, and no action for possession of land can be maintained under such circumstances unless there is a provision in the lease that on nonperformance of a covenant by the lessee, the landlord shall have the right of reentry. There was a specific provision to this effect in the instant case (paragraph Twenty-first of original lease, supra), and therefore the failure to pay the taxes constituted such a breach. The defendant is not in a position to object that the original covenant was between Champion and the plaintiff and that, therefore, failure to pay the taxes would not bar him since he was a stranger to that contract.
*46 A subletting creates a relationship of landlord and tenant between the tenant (here Champion) and the subtenant (here Fit-Rite and assignees), but there is no privity of contract between the landlord (here Wehrle) and the subtenant (Fit-Rite and assignees of Fit-Rite including defendant), and anything which defeats the tenants' estate will defeat the subtenant's estate. Baum v. Tazwell, 26 N.J. Misc. 292, 61 A.2d 12 (Cir. Ct. 1948).
"The right of the sublessee to the possession of the premises as against the original lessor terminates with the lease or term of the original lessee, and since a subtenant holds the premises subject to the performance of the terms and conditions impressed upon the estate by the provisions of the original lease, his rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's term based upon the latter's nonperformance of obligations imposed on him. Thus, if the original tenant has incurred a forfeiture of his lease, and for that reason the landlord annuls the lease, the landlord is entitled to the possession as against the sublessee." 32 Am. Jur., Landlord and Tenant, § 424, p. 344.
The defendant is completely protected by the agreement of August 27, 1948, which is the agreement now in effect. The plaintiff has reaffirmed that agreement and her obligation to pay to the defendant 20% of the difference between the $77,157 and the sales price contracted for with Koven.
The demand on the second count of the counterclaim is at least premature. Defendant alleges he is entitled to 20% of the difference between $77,157 and $110,000, thereby affirming the validity of the agreement of August 27, 1948 between plaintiff and Champion. He alleges demand upon plaintiff for payment of that sum and refusal on her part to pay same. However, he himself has prevented fulfillment of this agreement by obtaining the aforementioned restraint of September 17, 1952. At the hearing the defendant offered to permit the plaintiff to complete the sale and to pay all the proceeds into court until the question was resolved relative to what constitutes "net proceeds" which question is not presently before the court. Under the circumstances, I do not see how the defendant can be irreparably *47 injured so as to warrant a restraint against the sale to Koven.
By her notice of motion plaintiff abandons her claim for mesne profits alleged in the complaint. Under the circumstances, the defendant may not ask damages for the cost of improvements. This claim therefore, if valid, must be the subject of a different action. N.J.S. 2A:35-3 (R.S. 2:51-48).
Under the lease the tenant was obligated to make repairs (fourth cause of action of the counterclaim). Paragraph "Fifth" (b) of the lease reads as follows:
"Fifth: In addition to the rental hereinabove specified, the tenant agrees and covenants * * *
(b) To take good care of the premises and at its own cost and expense make all repairs (except such as are required by structural repairs and defects) during the term of this lease and at the end or other expiration of the term, shall deliver up the demised premises in good order or condition, damages by the elements excepted and fire."
In the instant case, therefore, I feel that the defendant's motion to strike the complaint should be denied, that the plaintiff's motion to strike the amended answer and counterclaim should be granted, that the plaintiff's motion for summary judgment on the pleadings should be granted, and that the restraint heretofore entered on September 17, 1952 should be dissolved. The defendant has applied for an order permitting him to file an amended and supplemental answer and counterclaim. He relies on his payment, since his breach, of amounts due for increased taxes. This he was bound to do. There is no merit to the application at this time. The application is denied.
Plaintiff will present an order for signature in accordance with the conclusions herein expressed.